## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| KAWALJEET K. TAGORE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL PROTECTIVE SERVICE; U.S. DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; MICHAEL CHERTOFF, Secretary of the U.S. Department of Homeland Security; HENRY M. PAULSON, JR., Secretary of the Treasury; WILLIAM A. CARMODY, III; DAVID HIEBERT; CHRISTINA NAVARETE-WASSON; SERGIO ARELLANO; JAMES K. ELLIS; NIEVES NARVAEZ; and DOES 1-25<br><br>Defendants. | Civil Case No.:_____<br><br><br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Kawaljeet Kaur Tagore alleges as follows:

### INTRODUCTION

1.      Plaintiff, Kawaljeet Kaur Tagore ("Tagore" or "Plaintiff"), brings this action against the United States of America, U.S. Department of Homeland Security; Federal Protective Service; U.S. Department of the Treasury; Internal Revenue Service; Michael Chertoff, Secretary of the U.S. Department of Homeland Security; Henry M. Paulson, Jr., Secretary of the Treasury; William A. Carmody, III; David Hiebert; Christina Navarete-Wasson; Sergio Arellano; James K. Ellis; Nieves Narvaez; and Does 1 through 25 to redress the Defendants' actions in substantially burdening her exercise of religion and subjecting her to discrimination during the course of her

employment. This suit is brought to secure the protection of, and to redress the deprivation of rights secured by, the Religious Freedom Restoration Act ("RFRA"), codified at 42 U.S.C. § 2000bb *et seq.*, and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C: §2000e, *et seq.,* as amended ("Title VII").

## JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201, 2202, and 1367.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§1391(b) and (e), and 42 U.S.C. § 2000e-5(f)(3).

4. Intradistrict assignment to the Houston Division is proper because a substantial part of the events giving rise to Tagore's claims occurred in Houston, Texas.

## PROCEDURAL & ADMINISTRATIVE REQUIREMENTS

5. Tagore has satisfied all of the procedural and administrative requirements set forth in Title VII, 42 U.S.C. § 2000e-15(c), in particular:

   (A) On or about March 10, 2006, Tagore filed a complaint of employment discrimination with the Department of Treasury.

   (B) On or about October 8, 2008, the Department of Treasury released a notice of final action in regards to her complaint of employment discrimination.

   (C) This Complaint is being filed within ninety (90) days of Tagore's receipt of the notice of final action.

6. Tagore's claim under RFRA does not require administrative exhaustion.

## THE PARTIES

7. Plaintiff, KAWALJEET KAUR TAGORE, is a citizen of the United States of America and resident of Houston, Texas. She is a member of the Sikh faith. As a Sikh, she has a sincerely held religious belief that she carry a kirpan, an Article of Faith, on her person at all times. From approximately July of 2004 until July of 2006, Tagore was employed by the Internal Revenue Service ("IRS"), a bureau of the U.S. Department of the Treasury ("DOT"), as an Internal Revenue Agent.

8. The U.S. Department of Homeland Security ("DHS") was organized and exists under the laws of the United States of America;

9. The Federal Protective Service ("FPS") was at all times mentioned herein a division of the U.S. Immigration and Customs Enforcement ("ICE"), which was established in March of 2003 as part of the U.S. Department of Homeland Security ("DHS"), organizing and existing under the laws of the United States of America (collectively, "DHS-FPS").

10. Upon information and belief, DHS-FPS maintains a regional office in Houston, Texas.

11. U.S. Department of the Treasury ("DOT") was organized and exists under the laws of the United States of America;

12. The Internal Revenue Service ("IRS") was at all times mentioned herein a bureau of the U.S. Department of Treasury ("DOT"), organizing and existing under the laws of the United States of America (collectively, "DOT-IRS").

13. DOT-IRS maintains a regional office in Houston, TX.

14. Defendant MICHAEL CHERTOFF is Secretary of the U.S. Department of Homeland Security. Chertoff is sued in his official capacity only.

15. Defendant HENRY M. PAULSON, JR. is Secretary of the Treasury. Paulson is sued in his official capacity only.

16. Defendant WILLIAM A. CARMODY, III, was an Area Commander for DHS-FPS at all relevant times herein.

17. Defendant DAVID HIEBERT was a District Commander DHS-FPS at all relevant times herein.

18. Defendant CHRISTINA NAVARETE-WASSON was an Equal Employment Opportunity Director at DOT-IRS at all relevant times herein.

19. Defendant SERGIO ARELLANO was a Director of Field Operations at DOT-IRS at all relevant times herein.

20. Defendant JAMES K. ELLIS was a Senior Manager at DOT-IRS at all relevant times herein.

21. Defendant NIEVES NARVAEZ was a Group Supervisor at DOT-IRS at all relevant times herein.

22. At all relevant times herein, defendants DOES 1-25 (also referred to hereinafter as the "DOE defendants") were employees, and or otherwise representatives of DHS-FPS, DOT-IRS, other federal agencies, state agencies, local government agencies, and/or private actors acting in their official and/or individual capacities. Plaintiff and/or her representatives have undertaken reasonable and diligent efforts to ascertain the true identities of DOES 1 through 25, but, despite such efforts, Plaintiff is presently unaware of the true identities of defendants DOES 1 through 25, inclusive, and Plaintiff therefore sues each such defendant by a fictitious name. Upon information and belief, Tagore alleges that DOES 1 through 25, inclusive, are legally responsible for the wrongs committed against Plaintiff, as alleged herein. When Plaintiff

becomes aware of the true identities of one or more DOE defendants, Plaintiff will amend her complaint to add or substitute them as named defendants.

## FACTS COMMON TO ALL COUNTS

23. Tagore is a citizen of the United States of America and resident of Houston, Texas.

24. Tagore is a member of the Sikh faith. Sikhism is a monotheistic religion that originated in the fifteenth century in the Punjab region of South Asia. It is now one of the world's largest religions, with approximately 20 million adherents worldwide. Approximately 500,000 Sikhs live in the United States.

25. In approximately July of 2004, Tagore began working for the Internal Revenue Service ("IRS") as an Internal Revenue Agent. Her workplace was the Mickey Leland Federal Building ("Leland Building") in downtown Houston.

26. On or about April 14, 2005, consistent with the teachings of Sikhism, Tagore was formally initiated into the Sikh faith by undergoing the ceremony known as *Amrit Sanskar*. A Sikh makes an active decision to participate in an *Amrit Sanskar* ceremony when she is ready to commit herself to the tenets of the faith. *Amrit Sanskar* is an analogue of baptism in Christianity or the bar/bat mitzvah in Judaism.

27. Upon initiation through *Amrit Sanskar*, a Sikh is obligated to wear at all times the five Sikh Articles of Faith (known colloquially as the "Five Ks" because they all begin with the Punjabi letter for "K"). The five Articles of Faith are: *Kesh* (maintaining hair unshorn and covered), *Kangha* (wooden comb), *Kara* (steel bracelet), *Kacha* (undergarment), and *Kirpan* (emblem of justice).

28. These Articles of Faith are physical manifestations of core Sikh spiritual values, reminding their bearer that her actions should be consistent with her beliefs. The Articles of Faith also serve as a public expression of the Sikh believer's faith, identifying them to others as a Sikh, just as a yarmulke might identify a Jewish believer or a clerical collar might identify a Christian minister. The obligation of Sikhs to keep these Articles of Faith is a cornerstone of the Sikh religion and is commonly viewed by members of the Sikh faith to be among the central requirements of the Sikh religion.

29. After initiation a Sikh must wear all five Articles of Faith, even though it might result in the loss of property, freedom or life. Because Sikhs have suffered much religious persecution throughout their history, many Sikhs have lost their lives because they have refused to stop bearing their Articles of Faith.

30. The kirpan, as a Sikh Article of Faith, obligates a Sikh to the highest ideals of generosity, compassion, and service to humanity. The kirpan in particular acts as a constant reminder to its bearer of a Sikh's solemn duty to protect the weak and promote justice for all. Sikhs are religiously obligated to carry a kirpan on their person at all times.

31. Government agencies, private sector employers, and colleges have accommodated the wearing of the five Articles of Faith, including the kirpan. For example:

- The Federal Protective Service, a sub-division of the U.S Department of Homeland Security, has granted an accommodation allowing Sikh contract security guards to carry kirpans in Federal facilities;
- The International Monetary Fund has granted an accommodation allowing a Sikh worker to carry a kirpan in its Washington, D.C. office;

- AT&T has granted an accommodation allowing a Sikh worker to carry a kirpan into an Ohio office;

- Harvard University and the University of California at Berkeley allow Sikh students to carry kirpans on their campuses;

32. Consistent with her religious beliefs, after her participation in an *Amrit Sanskar* ceremony Tagore began carrying a kirpan.

33. On or about April 18, 2005, Tagore had a discussion with her supervisor at the IRS, Nieves Narvaez, during which he expressed concern about her ability to carry her kirpan in her workplace.

34. On or about April 19, 2005, Narvaez asked Tagore for written information about the kirpan, and discussed it with her.

35. As a result of this discussion, Tagore subsequently began carrying a shorter kirpan to work, one that was as small as her religious conscience would allow. The edge of this kirpan was approximately three inches long and was *not* sharp or capable of inflicting bodily injury. The kirpan's total length was approximately six inches.

36. On or about April 20, 2005, Tagore, through counsel, provided the IRS with written information about the kirpan and requested that Tagore be provided an accommodation to carry her kirpan into her workplace in the Leland Building. On approximately the same day, Narvaez informed Tagore to leave work and that carrying her kirpan to her workplace violated agency Rules of Conduct and federal law, namely 18 U.S.C. § 930.

37. 18 U.S.C. § 930 prohibits people from possessing or causing to be present dangerous weapons in federal facilities, including "knives" with "blades" of 2.5 inches or longer. The statute contains certain exemptions including "the lawful carrying of firearms or other

7

dangerous weapons in a Federal facility incident to hunting or other lawful purposes". 18 U.S.C. § 930(d)(3).

38. 18 U.S.C. § 930 does not define "knife" or "blade".

39. Upon information and belief, the Federal Protective Service ("FPS") is responsible for ensuring the safety and security of the Leland Building, and enforces 18 U.S.C. § 930 as applied to the Leland Building.

40. In April of 2005, each time Tagore entered the Leland Building while wearing a kirpan, she consistently was able to pass through the Federal Protective Service security checkpoint – including walking through a metal detector.

41. During Tagore's employment with the IRS, the IRS distributed scissors, letter openers, and box cutters to its employees working in the Leland Building. Unlike Tagore's kirpan, these objects were sharp and dangerous. In many instances, these objects were much longer than Tagore's kirpan.

42. The IRS distributed a pair of scissors and a letter opener to Tagore, which she used to perform her job responsibilities outside of the Leland Building. The IRS and FPS knowingly permitted Tagore to pass through the FPS security checkpoint in the Leland Building with the IRS-distributed scissors and letter opener in her possession.

43. Tagore has also witnessed a federal employee use a kitchen knife in the Leland Building that was longer and sharper than her kirpan.

44. Upon information and belief, there are hundreds of objects in the Leland Building that are both sharper and longer than Tagore's kirpan.

45. Upon information and belief, Defendants are and have been aware that these objects are present in the Leland Building but allowed them anyway. In effect, Defendants have

exempted those objects from the sweep of the regulations that they applied to burden Tagore's religious exercise.

46. During Tagore's employment with the IRS, the IRS and/or FPS knowingly permitted certain individuals carrying firearms and other dangerous weapons to pass through the FPS security checkpoint in the Leland Building without disarming them.

47. FPS does not check packages of office supplies ordered by and delivered to the federal offices in the Leland building.

48. Defendants have not removed scissors and box cutters from federal buildings, including the Leland Building.

49. After the IRS sent Tagore home, the agency initially told her that she must use her personal vacation days. The agency ultimately allowed Tagore to take "flexi-place" leave, through which she could work primarily from home.

50. While Tagore was on flexi-place leave, the IRS and/or FPS knowingly permitted Tagore to periodically enter into and work in other Federal facilities – as that term is defined under 18 U.S.C. § 930 – with her kirpan, scissors, and letter opener in her possession.

51. Tagore worked at home on flexi-place for over nine months. As time passed she was increasingly given assignments that were below grade work or that were clerical tasks.

52. Upon information and belief, IRS employees spoke to FPS employees William A. Carmody, III, District Commander, and David Hiebert, Area Commander, about Tagore's kirpan. The FPS and IRS took the position that allowing Tagore in the Leland Building with her kirpan violated 18 U.S.C. § 930 because the kirpan's edge was over 2.5 inches.

53. The IRS refused to provide a reasonable accommodation for Tagore's kirpan although doing so would not have placed an undue hardship on the agency. Upon information

and belief, the IRS employees who made this decision included Group Supervisor Nieves Narvaez, Senior Manager James K. Ellis, Director of Field Operations Sergio Arellano, and Equal Employment Opportunity Director Christina Navarete-Wasson. The IRS instead asked Tagore to consider modifying her kirpan, or to not carry it into the Leland Building.

54. On or about January 20, 2006, Sergio E. Arellano, IRS Director of Field Operations, directed Tagore to modify her kirpan and report to work at the Leland Building by January 30, 2006.

55. On January 30, 2006, Tagore reported to work at the Leland Building wearing her religiously-mandated kirpan. She had not modified it. She told FPS officers that she was wearing her kirpan and they disallowed her from entering the building.

56. IRS thereafter charged her with being "AWOL" (Absent Without Leave). The agency removed her from flexi-place leave, and stopped paying her salary.

57. On or about March 9, 2006, Tagore, at her supervisor's direction, went to the Leland Building to return files. She entered the building and was able to pass through FPS security, including a metal detector, while wearing her kirpan. The IRS sent her home when the agency learned that she was carrying her kirpan.

58. On or about March 10, 2006, Tagore filed an employment discrimination complaint with the U.S. Department of Treasury.

59. On or about July 11, 2006, the IRS terminated Tagore's employment.

60. Prior to Tagore's termination, no IRS or FPS employee ever inspected Tagore's kirpan in order to determine whether bringing it into the Leland Building would have violated 18 U.S.C. § 930 or agency Rules of Conduct.

## COUNT ONE

**(Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*)**

**(Against All Defendants)**

61. Tagore repeats and realleges each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

62. Defendants' interpretation of 18 U.S.C. § 930 and DOT rules of conduct substantially burdened Tagore's religious exercise of wearing her kirpan.

63. Defendants' refusal to allow Tagore to carry her kirpan into a federal facility was not in furtherance of a compelling government interest.

64. Even assuming Defendants' interpretation of 18 U.S.C. § 930 furthered a compelling governmental interest, completely banning Tagore from carrying her kirpan into the Leland Building was not the least restrictive means of furthering any such interest.

65. As a direct and proximate cause of Defendants' actions, Tagore has been harmed.

66. Tagore's harm includes, but is not limited to, being denied the freedom to practice and observe her religion, and she is entitled to all legal and equitable remedies under RFRA.

## COUNT TWO

**(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**

**(Against Defendant Henry M. Paulson, Jr.)**

67. Plaintiff Tagore repeats and realleges each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

68. Defendants discriminated against Tagore with respect to the terms, conditions, and privileges of her employment on the basis of her religion (Sikhism) in violation of Title VII of the Civil Rights Act of 1964.

69. Defendants' conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Tagore.

70. Tagore was qualified for her position with the IRS; however, the IRS barred her from her workplace, made her work primarily from home, ultimately deemed her absent without leave and terminated her.

71. Defendants refused to accommodate Tagore's bona fide religious beliefs, after being put on notice of such beliefs. Reasonable accommodation of such religious beliefs would not have placed an undue hardship on Defendants.

72. Defendants' policies and practices had an adverse impact on kirpan-wearing Sikhs.

73. Defendants retaliated against Tagore for filing a complaint on the basis of Defendants' discriminatory treatment, by terminating her.

74. By reason of the Defendants' discrimination, the Tagore suffered severe harm, and is entitled to all legal and equitable remedies available under Title VII, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Tagore seeks the following relief:

A. A declaration that Defendants' policies, practices, procedures, conditions, and customs violated the rights of the Tagore as secured by RFRA and Title VII;

B. Preliminary and permanent injunctions enjoining the Defendants, their agents, successors, and employees from preventing Tagore from wearing her kirpan;

C. An award of back pay, front pay, reinstatement, and restoration of benefits, and seniority;

D. Any other appropriate equitable relief to the Tagore;

E. An award of nominal, consequential, compensatory, and punitive damages to the Tagore in an amount to be determined at trial;

F. An award of litigation costs and expenses, including reasonable attorneys' fees, to Tagore, including without limitation fees and costs awarded pursuant to 42 U.S.C. ;

G. Pre-judgment interest; and

H. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Tagore demands trial by jury of all issues triable of right to a jury.

Respectfully submitted this 6th day of January, 2009.

**/s/ Scott Newar**

---

Scott Newar
Texas Bar Number 14940900
Southern District of Texas Bar Number 19191
700 Louisiana Street, Suite 2550
Houston, Texas 77002-2728
713-226-7950 (Office)
713-226-7181 (Fax)
newar@newarlaw.com
Attorney-In Charge for Plaintiff

OF COUNSEL

The Becket Fund for Religious Liberty
Eric C. Rassbach (pending *pro hac vice* admittance)
Texas Bar No. 24013375
1350 Connecticut Avenue, N.W.
Suite 605
Washington, D.C. 20036
Telephone: (202) 955-0095
erassbach@becketfund.org


The Sikh Coalition
Harsimran Kaur (pending *pro hac vice* admittance)
39465 Paseo Padre Parkway, Ste. 3550
Fremont, CA 94538
Telephone: (510) 659-0900, ext. 92
Fax: (212) 208-4611
harsimran@sikhcoalition.org