# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| KAWALJEET K. TAGORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY, FEDERAL PROTECTIVE | ) |
| SERVICE; U.S. DEPARTMENT OF THE | ) Case No. 4:09-CV-00027 |
| TREASURY; INTERNAL REVENUE | ) |
| SERVICE; JANET NAPOLITANO, | ) |
| Secretary of the U.S. Department of | ) |
| Homeland Security; TIMOTHY F. | ) |
| GEITHNER, Secretary of the Treasury; | ) |
| WILLIAM A. CARMODY, III; DAVID | ) |
| HIEBERT; CHRISTINA NAVARETE- | ) |
| WASSON; SERGIO ARELLANO; JAMES | ) |
| K. ELLIS; NIEVES NARVAEZ; and | ) |
| DOES 1-25, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## <u>PARTIAL MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    CONSIDERATION OF RFRA'S LEGISLATIVE HISTORY IS
        APPROPRIATE. ................................................................................................... 2

    II.   RFRA'S LEGISLATIVE HISTORY IS CLEAR, AND SUPPORTS
        DEFENDANTS' POSITION ................................................................................ 5

    III.  TITLE VIII PREEMPTS PLAINTIFF'S RFRA CLAIM AGAINST THE IRS. .. 7

        A.    Plaintiff RFRA and Tile VII Claims Arise Out of the Same Facts ............ 7

        B.    Circuit and District Courts Have Held That the Preemptive Effect of Title
             VII Precludes RFRA Claims. .................................................................... 8

    IV.  THE PREEMPTION CASES CITED BY DEFENDANTS DID NOT TURN
        ON WHETHER PLAINTIFF'S CLAIM WAS ADMINISTRATIVELY
        EXHAUSTED. .................................................................................................... 13

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

Brown v. GSA,
    425 U.S. 820 (1976) .................................................................................................. passim

Davis v. Passman,
    442 U.S. 228 ............................................................................................................... 12

Dorsey v. Roche, No. 00-21070 (N.D. Cal. 2002) ........................................................ 14

Ethnic Employees of the Library of Congress v. Boorstin,
    751 F.2d 1405 (D.C. Cir. 1985) ................................................................................ 12

Francis v. Mineta,
    505 F.3d 266 (3d Cir. 2007) ................................................................................ passim

Halcomb v. Office of the Senate Sergeant-at-Arms of the United States Senate,
    209 F. Supp. 2d 175 (D.D.C. 2002) .......................................................................... 12

Hanson v. Hoffman,
    628 F.2d 42 (D.C. Cir. 1980) .................................................................................... 12

In re Weinstein,
    272 F.3d 39 (1st Cir. 2001) ......................................................................................... 4

Jackson v. Widnall,
    99 F.3d 710 (5th Cir. 1996) .................................................................................. 7, 11

Kizas v. Webster,
    707 F.2d 524 (D.C. Cir. 1983) ............................................................................. 4, 12

Radzanower v. Touche Ross & Co.,
    426 U.S. 148 (1976) .................................................................................................... 3

Reed v. Slater  No. 98-1298 at 543 (D. Colo. 2001) ............................................. 10, 14

Rowe v. Sullivan,
    967 F.2d 186 (5th Cir.1992) ....................................................................................... 1

United States v. Fairman,
    947 F.2d 1479 (11th Cir. 1991) .................................................................................. 4

United States v. Ron Pair Enterprises, Inc.,
	489 U.S. 235 (1989) ............................................................................................... 5
Watt v. Alaska,
	451 U.S. 259 (1981) ............................................................................................... 4


## **STATUTES & REGULATIONS**

2 U.S.C. §§ 1302-1438 (2000) .............................................................................................. 12

18 U.S.C. § 930 ...................................................................................................................... 10

42 U.S.C. § 2000bb(b) ....................................................................................................... 2, 3

42 U.S.C. § 2000bb-3(a) ........................................................................................................ 3


## **LEGISLATIVE MATERIAL**

S. Rep. No. 103-111, 103d Cong., 1st Sess., reprinted in
	1993 U.S.C.C.A.N. 1892 ............................................................................. 1, 3, 5, 6

## INTRODUCTION

Defendants have moved to dismiss plaintiff's RFRA claim against the IRS defendants (including the Department of Treasury and its employees) because it is preempted by Title VII, which provides the exclusive remedy for claims of religious discrimination in federal employment. Defendants' Partial Motion to Dismiss ("Defs' Mot."). Defendants have also moved to dismiss what they understood to be plaintiff's unexhausted retaliation "claim," as well as the claims against the individual defendants in their individual capacities and the as yet unnamed defendant John Does.

In Plaintiff's Opposition to Motion for Partial Dismissal ("Pl's Opp."), plaintiff clarified that her lawsuit consists of only two claims: one under Title VII for religious discrimination and one under RFRA alleging that her religious beliefs were substantially burdened. She essentially conceded that any retaliation "claim" was not exhausted, and asserted that she did not intend to bring a claim for retaliation in this lawsuit. She also did not oppose dismissal of the claims against the defendants in their individual capacities or dismissal of the Doe defendants.

With respect to defendants' motion to dismiss plaintiff's RFRA claim against the IRS as preempted by Title VII, plaintiff urges this Court to ignore the mandate of Brown v. GSA, 425 U.S. 820 (1976), which the Fifth Circuit has interpreted to "stand[] for the proposition that Title VII is the exclusive judicial remedy for claims of discrimination in federal employment," Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir.1992), as well as RFRA's legislative history, which clearly states: "Nothing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964." S. Rep. No. 103-111 at 12-13 (1993), as reprinted in 1993 U.S.C.C.A.N. 1879, 1903 (attached as Ex. D to Defs' Mot.). Plaintiff also largely ignores the cases that have confronted this issue directly, which have held consistently

that claims of federal employment discrimination based upon religion must be brought under Title VII rather than RFRA. See, e.g., Francis v. Mineta, 505 F.3d 266 (3d Cir. 2007) (holding that Title VII provides the exclusive remedy for job-related claims of federal religious discrimination). In the end, both Brown and RFRA's legislative history bar plaintiff's RFRA claim against the IRS.

## ARGUMENT

I.   CONSIDERATION OF RFRA'S LEGISLATIVE HISTORY IS APPROPRIATE.

Standard canons of statutory construction justify consideration of RFRA's legislative history, and preclude plaintiff's claim under RFRA. Plaintiff responds to defendants' argument that Title VII preempts religious discrimination claims brought by federal employees under RFRA by contending that consideration of RFRA's legislative history is inappropriate. See Pl's Opp. 10-14. Plaintiff bases this assertion on her contentions that "RFRA includes no exception when the plaintiff happens to be a federal employee," and that "the plain meaning of RFRA's statutory text is clear." Id. 10-11. These arguments, however, are flawed for several reasons.

First, it is important to understand defendants' actual argument, which plaintiff has apparently misunderstood. Defendants do not contend that *no* federal employee can sue under RFRA; rather, defendants' argument is that a federal employee cannot bring what is actually a Title VII claim for religious discrimination against her employer under RFRA. If plaintiff had brought a RFRA claim against the IRS that was unrelated to a claim for discrimination in employment, defendants would not have moved to dismiss it on Title VII preemption grounds. Thus, defendants have not moved to dismiss plaintiff's RFRA claim against DHS. Accordingly, plaintiff's argument that RFRA "includes no exception when the plaintiff happens to be a federal

employee," Pl's Opp. 10, is a red herring.

Second, plaintiff's "plain meaning" argument does not preclude consideration of RFRA's legislative history. Plaintiff argues that RFRA "is designed to preempt all law," including Title VII, Pl's Opp. 11-12, basing this contention on RFRA's statement that it "applies to all Federal law, and the implementation of that law, whether statutory or otherwise." 42 U.S.C. § 2000bb-3(a). Plaintiff contends that this language "accords with RFRA's stated purpose, 'to guarantee [the compelling interest test's] application in all cases where free exercise of religion is substantially burdened' and 'to provide a claim or defense to persons whose religious exercise is substantially burdened by government.'"[1] Pl's Opp. 11 (citing 42 U.S.C. § 2000bb(b)).

Under plaintiff's argument, therefore, RFRA would be unlimited in scope, preempting *all* prior and subsequent law. But this argument overlooks canons of statutory construction that apply directly to this case, and which require consideration of RFRA's legislative history. First, "[i]t is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976). Thus, "'[w]here

---

[1] Plaintiff contends that "[t]he Government argues that RFRA must be preempted by Title VII because RFRA incorporates 'pre-Smith' First Amendment case law." Pl's Opp. 12. But this misstates the defendants' argument. Defendants' argument that Title VII preempts RFRA in the employment discrimination context is not *based* on pre-Smith First Amendment case law. Rather, the defendants' argument is that RFRA's purpose is limited, and was "only to overturn the Supreme Court's decision in Smith." S. Rep. No. 103-111, at 12, 1993 U.S.C.C.A.N. at 1902. Consistent with this limited purpose, Congress made clear that it did not intend RFRA to upset existing statutory schemes, and RFRA left untouched Title VII's preemptive effect in employment discrimination cases. See Defs' Mot. 13-14. Once it is clear that defendants' Title VII preemption argument is not based on pre-Smith case law, whether defendants cite any pre-RFRA cases in which Title VII preempted claims based on pre-Smith case law is irrelevant. See Pl's Opp. 12.

there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" Id. (citation omitted).

As the Supreme Court recognized in Brown v. GSA, 425 U.S. 820, 834 (1976), Title VII's remedial scheme for federal employees is specific, detailed, and comprehensive. RFRA, by contrast, is a general statute designed to apply to a broad range of government action outside the federal employment context. See Kizas v. Webster, 707 F.2d 524, 542-43 (D.C. Cir. 1983). The contrast between the specific and exclusive remedial scheme of Title VII, when compared to the general language of RFRA, certainly justifies consideration of RFRA's legislative history. And that history is clear in stating that RFRA is not intended in any way to affect Title VII's scheme of addressing religious discrimination claims. See S. Rep. No. 103-111 at 13 (1993), as reprinted in 1993 U.S.C.C.A.N. at 1903 ("Nothing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964."). To allow a RFRA claim arising out of federal employment discrimination would negate Title VII's preemptive effect on other remedies, and would permit parties to bypass Title VII's remedial scheme simply through their choice of pleading. Congress plainly did not intend such a result.

Moreover, to the extent there is tension between RFRA's language and the exclusive remedial scheme of Title VII, resolving that tension requires an analysis of the legislative history and purpose of the two statutes. See Watt v. Alaska 451 U.S. 259, 266-67 (1981) (declining to read two statutes in conflict "without seeking to ascertain the actual intent of Congress," and examining the legislative history of each statute); In re Weinstein, 272 F.3d 39, 44 (1st Cir. 2001) (holding that a conflict between two statutory provisions "provides a reason to move beyond the text and to examine a statute's legislative history and apparent purpose."); United

States v. Fairman, 947 F.2d 1479, 1481-82 (11th Cir. 1991) (noting that "cases may arise where two provisions in the same statute, or in two separate statutes, apparently conflict. It is up to the courts to make sense of the inconsistencies" by consulting, among other things, legislative history.). Because plaintiff's proposed interpretation of RFRA would bypass Title VII's exclusive remedial mechanism, resort to legislative history is appropriate to determine whether Congress truly intended such a result.[2]

Finally, even in the face of a clear statute, a court is permitted to consult legislative history where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989). In such cases, the intention of the drafters will control. Id. Here, plaintiff's reading of RFRA to preempt all other law is "demonstrably at odds" with the stated intent of Congress, which was that RFRA was not intended to "unsettle other areas of law." S. Rep. No. 103-111 at 12 (1993), as reprinted in 1993 U.S.C.C.A.N. 1879. Such a result permits consideration of the legislative history of the statute in this case.

## II. RFRA'S LEGISLATIVE HISTORY IS CLEAR, AND SUPPORTS DEFENDANTS' POSITION.

Plaintiff next contends that even if RFRA's legislative history were considered, it is

---

[2] Plaintiff's citation to Fifth Circuit case law that the legislative history should not be consulted when the language of a statute is unambiguous is not to the contrary. Pl's Opp. 13-14. Here, to the extent that RFRA's precise meaning is ambiguous with respect to its relation to Title VII, resort to the legislative history is appropriate. See Francis, 505 F.3d at 270 ("as we shall discuss, the plaint text of RFRA does not necessarily advance our inquiry, because, according to Francis, RFRA subsumes the prohibition on employment discrimination that is the hallmark of Title VII. Thus, to the extent that there is any ambiguity about RFRA's impact on Title VII, legislative history becomes a useful and appropriate tool for our inquiry into congressional intent.").

ambiguous. But in arguing that RFRA's legislative history is ambiguous, plaintiff wholly ignores Congress's statement in the section of the Senate Report on RFRA captioned "Other Areas of Law are Unaffected," which states: "Although the purpose of this act is only to overturn the Supreme Court's decision in *Smith*, concerns have been raised that the act could have unintended consequences and unsettle other areas of law." S. Rep. No. 103-111 at 12 (1993), as reprinted in 1993 U.S.C.C.A.N. 1879, 1902. It is in this context that the Senate Report discusses Title VII, as one of a number of areas not intended to be affected by RFRA: "Nothing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964." Id. at 13, as reprinted in 1993 U.S.C.C.A.N. at 1903.

Plaintiff strains to find ambiguity in this legislative history. First, plaintiff contends that the Senate Report was concerned with "'religious accommodations' [sic] rather than Brown." Pl's Opp. 14. This, however, is a distinction without a difference. A Title VII religious accommodation claim is still a Title VII claim, and Brown is clear that Title VII provides "the exclusive judicial remedy for claims of discrimination in federal employment." Brown, 425 U.S. 820, 835. Second, plaintiff points to two mentions of Title VII in the committee hearings that she claims "suggest[] that the reference to 'religious accommodation' was a comment on the impact of RFRA on private religious employers, not the application of Title VII to government employers." Pl's Opp. 15. The testimony to which she points, however, is that of James Bopp, Jr., the General Counsel of the National Right to Life Committee, a non-governmental witness whose testimony is not authoritative with respect to the actual intent of Congress. See Ex. I (attached hereto). Moreover, that testimony came in the context of a discussion with respect to whether RFRA would have an unintended effect on abortion – a concern that was ultimately –

-6-

and separately from the Title VII provision – addressed in the Senate Report.  S. Rep. No. 103-111 at 12 (1993), as reprinted in 1993 U.S.C.C.A.N. at 1901-02.  Finally, plaintiff argues that Congress's silence with respect to Title VII when it passed amendments to RFRA in 2000, cuts against the defendants' reading of RFRA.  But there was no reason for Congress to reiterate with the passage of the amendments that RFRA was not intended to affect the operation of Title VII.  Unless Congress were to *change* its interpretation of RFRA's effect on other laws, including Title VII, there would be no reason to include any additional statement about Title VII with the passage of an amendment to RFRA.  In fact, although plaintiff attempts to confuse RFRA's legislative history regarding Title VII, that legislative history is unambiguous.  Title VII retains its preemptive effect with respect to claims of religious discrimination in federal employment – the passage of RFRA and its amendments did nothing to change that.

In sum, the intent of Congress is clear: RFRA was not meant to affect Title VII's comprehensive remedial scheme for addressing claims of religious discrimination in federal employment.  Permitting a RFRA claim against the IRS to proceed here would be contrary to the intent of Congress and would undermine the remedial scheme of Title VII.  See Defs' Mot. 14-15.

## III.   TITLE VII PREEMPTS PLAINTIFF'S RFRA CLAIM AGAINST THE IRS.

### A.   Plaintiff's RFRA and Title VII Claims Arise Out of the Same Facts.

Plaintiff recognizes that "[t]he Fifth Circuit interprets Brown to mean that Title VII precludes lawsuits which 'arise out of the same facts' as a Title VII claim."  Pl's Opp. 16 (citing Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996).  As pleaded by plaintiff herself in her complaint, plaintiff's RFRA and Title VII claims "arise out of the same facts," and her RFRA

claim against the IRS should thus be precluded by Title VII.

Plaintiff's complaint contains one section of factual allegations, entitled "Facts Common to All Counts." She does not break down the factual allegations in her complaint further; rather, she pleads a single set of facts, all connected to her employment with the IRS and her inability to carry a kirpan into the federal building in which she worked. Pl's Compl. ¶¶ 23-60. While in her Opposition brief plaintiff contends that her RFRA claims are based on different facts than Title VII claims, Pl's Opp. 19-20, her own complaint pleads only a single set of facts in support of all of her claims. On the face of the complaint, plaintiff's RFRA claims thus "arise out of the same facts" as her Title VII claim, and her RFRA claim against the IRS is precluded by Title VII. Plaintiff cannot evade the literal language of her own pleadings by arguing that the complaint does not mean what it says, and now contend that, in fact, her RFRA and Title VII claims arise out of different facts.

### B. Circuit and District Courts Have Held That the Preemptive Effect of Title VII Precludes RFRA Claims.

Except to contend that Brown and its progeny do not apply here because "much of the reasoning in those cases rests on the notion that the federal government does not permit individuals to skip Title VII's exhaustion scheme," Pl's Opp. 20-21, plaintiff does not even attempt to distinguish the cases that have held Title VII to preempt RFRA claims. In fact, the facts and reasoning of those cases are applicable here.

In Francis v. Mineta, 505 F.3d 266, 268 (3d Cir. 2007), the plaintiff, Albion Francis, an African American male who wore his hair in dreadlocks, which he declared to be "an important expression of [his] sincerely held religious beliefs," was hired as an airport security screener by the Transportation Security Administration ("TSA"). TSA had a mandatory grooming policy for

its uniformed employees, including the plaintiff, that prohibited dreadlocks. Id. Plaintiff, who had been instructed not to take the oath of employment if this policy presented a problem, took the oath of office, and, when informed that he had to comply with the grooming policy, refused to cut his dreadlocks based on his religious beliefs. Id. Plaintiff was then ordered to sign a separation agreement terminating his employment. Id. He sued, asserting a cause of action for religious discrimination under RFRA, alleging that TSA fired him because he refused to comply with TSA's grooming policy, and alleging that the grooming policy, as applied to him, violated RFRA. Id. at 268-69.

> The Third Circuit's description of Francis's complaint is remarkably apt here:
>
> Francis's complaint alleges, *inter alia*, that in firing him for not cutting his dreadlocks, the TSA violated his right to freely exercise his religion. He claims that he was terminated because his religious practice (wearing dreadlocks) was inconsistent with TSA's grooming policy. He is suing because that policy failed to accommodate his religiously-based conduct. But that is an attempt to use RFRA to force the TSA to accommodate wearing dreadlocks because they have religious significance. The legislative history that we have discussed demonstrates that Congress did not intend RFRA to create a vehicle for allowing religious accommodation claims in the context of federal employment to do an end run around the legislative scheme of Title VII.

Francis, 505 F.3d at 271. In finding plaintiff's RFRA claim to be preempted by Title VII, the Third Circuit stated: "Title VII provides the exclusive remedy for job-related claims of federal religious discrimination, despite Francis's attempt to rely upon the provisions of RFRA." Id. at 272.

This case is similar to Francis. Here, as in Francis, the plaintiff alleges that her employment with the IRS was terminated[3] because her religious practice (wearing a kirpan) was

---

[3] Plaintiff did not challenge her termination in the administrative proceeding. See Tagore v. Paulson, EEOC Case No. 460-2007-00023X, Administrative Judge Bench Decision (October

-9-

inconsistent with entry into the building in which she worked, under the defendants'
interpretation of agency Rules of Conduct and federal law (18 U.S.C. § 930).  Plaintiff contends
that defendants would not accommodate her religiously based conduct.  Compl. ¶¶ 49, 51, 54,
55, 59.  As in Francis, plaintiff's RFRA claim against the IRS is essentially an attempt to use
RFRA to force the IRS to accommodate plaintiff's religiously based conduct.  And, as in
Francis, plaintiff's RFRA claim against the IRS should be dismissed as preempted by Title VII.

Notably, plaintiff does not even mention Reed v. Slater, see Defs' Mot. 15, in which the
RFRA claim was dismissed for reasons unrelated to a lack of administrative exhaustion.  There,
as here, the plaintiff contended that Brown did not apply to preempt a RFRA claim because "a
RFRA claim is not co-extensive with a Title VII claim."  Reed v. Slater, No. 98- 1298 at 543 (D.
Colo. 2001)  (Ex. F to Defs' Mot.).  As Tagore does here, the Reed plaintiff argued that his
RFRA claim was "not a discrimination claim," and, as such was entirely different from a Title
VII claim.  Id. at 544.  The court, however, rejected that argument and dismissed the plaintiff's
RFRA claim, stating:

> This is a case involving the employment relationship.  No matter how you slice it
> and dice it and say that the statutory RFRA claim can be fitted into that
> relationship, as well as the Title VII claim, it remains a claim that arises out of the
> employment relationship and concerns actions, including retaliatory actions, that
> the defendant allegedly took against the plaintiff with respect to the terms and
> conditions of his employment.

Id. at 545.  The court held that the gravamen of the action was tied to the facts – in these cases,

---

1, 2008) at 8 n. 14 (stating:  "[T]he termination issue was not accepted.") (Ex. A to Defs' Mot.).
Thus, plaintiff's termination was not raised before the EEOC, was not investigated, and
consequently was not exhausted.  To the extent that plaintiff now intends to raise her termination
as a claim in this case, Pl's Opp. 5-9, she may not, as it was not administratively exhausted prior
to this lawsuit.

employment discrimination – not the plaintiff's characterization of the statutory bases of the claims:

> There is not a single allegation of a wrong committed in this case to Mr. Reed which does not relate to his employment. The claim is, he was treated differently from other employees. That's a discrimination claim. The claim is that he was retaliated against because of his exercise of protected activity. The claim is that there was a failure to accommodate him as an employee. All of those are Title VII claims.

Id. at 548. The court then dismissed plaintiff's RFRA claim, leaving the Title VII claim for trial. Id. at 549.

Like Reed, this case stems from an employment relationship, and concerns actions that the defendants allegedly took against the plaintiff with respect to the terms and conditions of her employment. Plaintiff contends that she was treated differently from other employees when she was not permitted to enter the building because of her exercise of protected activity (carrying a kirpan), that she was retaliated against, and that she was not accommodated as an employee. As in Reed, those are Title VII claims.

Plaintiff also contends that "RFRA claims do not implicate Brown's anti-discrimination rationale." Pl's Opp. 16. This argument, of course, flies in the face of the reasoning in the cases cited by defendants in which courts have held Title VII to preempt RFRA claims by plaintiffs. See Defs' Mot. 14-15. In addition, this argument also ignores the cases holding that Title VII preempts even some types of constitutional claims. See, e.g., Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir.1996) (Title VII preempts constitutional claims of employment discrimination asserted against federal government). While plaintiff contends that Jackson is inapposite because the constitutional claims were tort claims, the language in Jackson is not so limited. See id. ("[T]itle VII provides the exclusive remedy for employment discrimination claims raised by

federal employees. . . . Insofar as Jackson's allegations of constitutional violations arise out of the same facts as his employment discrimination claims, therefore, they are preempted by title VII and cannot afford an independent ground for relief.").

Moreover, plaintiff has not pointed to any cases in which Title VII was held *not* to preclude a constitutional claim that arose from the same facts as the Title VII claim.[4] Title VII preemption is not so limited, and its preemptive effect cannot be circumvented by artful pleading.  See, e.g., Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (dismissing First and Fifth Amendment claims as preempted by Title VII, stating: "Allowing federal employees to recast their Title VII claims as constitutional claims would clearly threaten [the] same policies [mentioned in Brown].  For that reason, this circuit has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII."); Kizas v. Webster, 707 F.2d 524, 542 (D.C. Cir. 1983) (barring fifth amendment claim based on race and sex employment

---

[4] In a footnote, plaintiff contends that "[p]rior to RFRA, courts created separate constitutional causes of action for federal employees, which could be brought independently of Title VII." Pl's Opp. 12 n. 9.  But the cases that plaintiff cites do not relate to executive branch employees and do not stand for this proposition.  The plaintiffs in the cases cited by Tagore were both employees of the legislative branch, to whom, at the time those cases were decided, Title VII did not apply.  Davis v. Passman, 442 U.S. 228, 247 & n.26 (1979) (noting that Title VII was not available to the petitioner, a congressional employee who was not in the competitive service); Hanson v. Hoffman, 628 F.2d 42 (D.C. Cir. 1980) (employee of office under joint jurisdiction of Sergeant at Arms of the Senate and Clerk of the House of Representatives).  See Halcomb v. Office of the Senate Sergeant-at-Arms of the United States Senate, 209 F. Supp. 2d 175 , 176 (D.D.C. 2002) (explaining that Congressional Accountability Act of 1995, 2 U.S.C. §§ 1302-1438 (2000), made Title VII applicable to the legislative branch of the federal government).

discrimination).[5]

## IV. THE PREEMPTION CASES CITED BY DEFENDANTS DID NOT TURN ON WHETHER PLAINTIFF'S CLAIM WAS ADMINISTRATIVELY EXHAUSTED.

Finally, plaintiff conflates legal principles by arguing that because "[m]ost of the cases dealing with Title VII preemption involve plaintiffs attempting an end run around Title VII's exhaustion requirements," Pl's Opp. 20, they are not applicable here. Whether plaintiff has attempted to recast an unexhausted Title VII claim as a different one in order to avoid Title VII's exhaustion requirements is simply not dispositive to whether preemption applies. Indeed, the cases dealing with Title VII preemption do not *turn* on the exhaustion requirements, which makes sense. The holding of Brown has nothing to do with exhaustion, but, rather, is addressed directly to the underlying question of jurisdiction, with the simple conclusion that Title VII provides the exclusive remedy for claims of discrimination in federal employment.

The cases in which RFRA claims have been held to be preempted by Title VII are in line with the Brown reading of Title VII preemption. In Francis, for example, the plaintiff's complaint was dismissed because he brought it as a RFRA, and not a Title VII, claim. Francis, 505 F.3d at 272. Because plaintiff's claim was in actuality a Title VII claim, and it was unexhausted, plaintiff's complaint was dismissed. See id., 505 F.3d at 272 ("However, as we have explained, his claim is not a RFRA claim; rather, it is a Title VII claim and Title VII requires exhaustion."). But the Francis holding that found Title VII to preempt RFRA did not

---

[5] Plaintiff devotes a number of pages to her argument that RFRA is different from Title VII. Pl's Opp. 17-20. But that argument misses the point. In *this* case, where the underlying facts are identical, as pleaded in the complaint, and stem from the plaintiff's employment relationship with the IRS, plaintiff's RFRA claim against the IRS is preempted by Title VII as a matter of law.

-13-

turn on whether plaintiff's claim was exhausted. Rather, the court made clear that its decision was broader than that – that Congress did not intend to allow RFRA to do an end run "around the legislative scheme of Title VII." Id. at 271. Dismissal for lack of administrative exhaustion was merely a byproduct of the preemption. Similarly, in Reed v. Slater and Dorsey v. Roche, the courts dismissed the plaintiff's RFRA claims and let the Title VII claims (which had presumably been exhausted) proceed. See Exhibits E and F to Defs' Mot. Exhaustion simply did not come into play in those cases.

In fact, whether a Title VII claim preempts a RFRA claim should not – and does not – depend on the mere fact of whether a plaintiff exhausted her claim. Rather, it is the comprehensive legislative scheme of Title VII that precludes claims of religious discrimination in federal employment. Allowing such a determination to depend on whether a plaintiff exhausted her Title VII claim would fly in the face of the reasoning of Brown and its progeny.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' opening brief, Defendants' Partial Motion to Dismiss should be granted. Plaintiff's RFRA claim should be dismissed against the IRS defendants. In addition, plaintiff's claims against the individual defendants in their individual capacities, as well as her claims against the Doe defendants, should be dismissed from this case because plaintiff has voluntarily abandoned those claims.

Dated: June 8, 2009

                                        Respectfully submitted,

                                        TONY WEST
                                        Assistant Attorney General

TIM JOHNSON
Acting United States Attorney

STUART A. LICHT
Assistant Branch Director
Civil Division


 /s/ Vesper Mei
VESPER MEI (DC Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883 – Rm 7316
Washington, DC 20044
Telephone: (202) 514-4686
Facsimile: (202) 616-8470
vesper.mei@usdoj.gov

Attorneys for Federal Defendants

**CERTIFICATE OF SERVICE**

I, Vesper Mei, an attorney, hereby certify that on June 8, 2009, I electronically transmitted the foregoing Defendants' Reply in Further Support of Partial Motion to Dismiss to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic filing and to the following ECF registrants:

Scott David Newar
Attorney at Law
700 Louisiana
25th Fl
Houston , TX 77002
Email: newar@newarlaw.com

Eric Christopher Rassbach
The Becket Fund for Religious Liberty
1350 Connecticut Ave NW
Ste 605
Washington , DC 20036
Email: erassbach@becketfund.org

I further certify that a copy of the foregoing Reply was emailed this 8th day of June, 2009, to the following:

Amardeep Singh Bhalla
The Sikh Coalition
40 Exchange Place
Ste. 728
New York , NY 10005
Email: amar@sikhcoalition.org

Harsimran Kaur Dang
The Sikh Coalition
39465 Paseo Padre Pkwy
Ste. 3550
Freemont , CA 94538
Email: harsimran@sikhcoalition.org

                                         /s/ Vesper Mei
                                         VESPER MEI