**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| K<small>AWALJEET</small> K. T<small>AGORE</small>,<br><br>              Plaintiff,<br><br>   v.<br><br>T<small>HE</small> U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>; U.S. D<small>EPARTMENT OF</small> H<small>OMELAND</small> S<small>ECURITY</small>, F<small>EDERAL</small> P<small>ROTECTIVE</small> S<small>ERVICE</small>; U.S. D<small>EPARTMENT OF THE</small> T<small>REASURY</small>; I<small>NTERNAL</small> R<small>EVENUE</small> S<small>ERVICE</small>; J<small>ANET</small> N<small>APOLITANO</small>, Secretary of the U.S. Department of Homeland Security; T<small>IMOTHY</small> F. G<small>EITHNER</small>, Secretary of the Treasury; W<small>ILLIAM</small> A. C<small>ARMODY</small>, III; D<small>AVID</small> H<small>IEBERT</small>; C<small>HRISTINA</small> N<small>AVARETTE</small>-W<small>ASSON</small>; S<small>ERGIO</small> A<small>RELLANO</small>; J<small>AMES</small> K. E<small>LLIS</small>; N<small>IEVES</small> N<small>ARAVEZ</small>; <small>AND</small> D<small>OES</small> 1-25,<br><br>              Defendants. | C<small>ASE</small> N<small>O</small>. 4:09-CV-00027 |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO
PARTIAL MOTION TO DISMISS**

**ARGUMENT**

The Government's reply brief is more remarkable for what it does not say than for what it does.[1] In 20 pages, the Government never disputes that the statutory text is clear. The Government offers no binding precedent for its demand that the Court substitute unclear legislative history for that plain text. Nor does the Government identify a single case where Title VII pre-empted a pre-*Smith* free exercise claim. Instead, the Government simply recycles the arguments it made in the *Mineta* case without addressing contrary binding precedent of the *Fifth Circuit*.

The Government's main argument is that without Title VII preemption, RFRA would be too broad. But broad is exactly what RFRA was designed to be. "We have no cause to pretend that the task assigned by Congress to the courts under RFRA is an easy one," a unanimous Supreme Court said in *Gonzales* v. *O Centro,* 546 U.S. 418, 439, 126 S.Ct. 1211, 1225 (2006). "Indeed, the very sort of difficulties highlighted by the Government here were cited by this Court in deciding that the approach later mandated by Congress under RFRA was not required as a matter of constitutional law under the Free Exercise Clause." *Id.* (citation omitted). Even if the Government believes enforcing RFRA's plain terms to be more than it or the federal courts can bear—a notion undermined by the modest claims RFRA makes on this Court's docket—compliance is still required: "Congress has determined that courts should strike sensible balances, pursuant to a compelling interest test that requires the Government to address the particular practice at issue." *Id.* The Court is capable of striking that balance here.

---

[1] Plaintiff relies upon the statement of the issues and statement of the nature and stage of the proceedings included in her Response. Both remain unchanged.

**I. The Government never explains why the plain text rule does not apply, instead attempting to scare the Court with RFRA's scope.**

In her Response, Tagore argued that RFRA's plain text mandates that it apply to all federal law claims against the federal government, including employment claims.[2] Response at 11-12. On reply, the Government tacitly concedes that RLUIPA's plain text is clear and unambiguous by failing to respond to Tagore's argument. Instead of responding, the Government raises the specter of a RFRA which "would be unlimited in scope, preempting *all* prior and subsequent law." Reply at 3. This Chicken Little argument is belied by RFRA's clearly defined scope: it applies only when "religious exercise is substantially burdened by government." Response at 11 (citing 42 U.S.C. § 2000bb(b)). Moreover, it applies only to "a branch, department, agency, instrumentality and official [] of the United States." 42 U.S.C. § 2000bb-2; *see* Response at 15.[3] Within these narrow bounds, it does indeed "appl[y] to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993," unless, of course, Congress "explicitly excludes such application by reference to this chapter." Response 11-12; 42 U.S.C. 2000bb-3. This is not a gloss put on the law by Tagore, but the plain words of the statute.

Congress was perfectly able to exempt laws from RFRA if it wished to, and in fact it has: RFRA does not "affect, interpret, or in any way address" the Establishment Clause, nor can it be used to challenge "government funding, benefits or exemptions to the extent permissible under the Establishment Clause." 42 U.S.C. § 2000bb-4. Other laws may be amended or written to

---

[2] The Government begins by refining its original argument, stating that Title VII does not bar all RFRA claims by federal employees, just most of them. Reply at 2-3. But this argument is irrelevant to the primary issue: whether this Court is bound by the plain text of the statute or an ambiguous piece of legislative history. *See* Response at 10-15. Both the Government's original argument and its new one require this Court to depart from the statutory text.

[3] It also applies to the District of Columbia and U.S. territories and possessions. 42 U.S.C. § 2000bb-2(2).

avoid RFRA. 42 U.S.C. § 2000bb-3. Congress, while carving out exemptions, did not write Title VII into these exemptions. Tagore does not ask this Court to make RFRA limitless in scope, but merely to apply it where Congress said it should: to "provide a claim of defense to persons whose religious exercise is substantially burdened by [the federal] government." 42 U.S.C. § 2000bb, 2000bb-2 (defining "government" as federal government).

On reply, the Government introduces a new argument: a crabbed version of the plain meaning rule. It insists that (1) the Court cannot take RFRA's plan language seriously because specific statutes like Title VII control general statutes like RFRA, and (2) because the statutes conflict, the Court must delve into the legislative history of both statutes. Reply at 3-5. These arguments fail for two reasons.

First, the Supreme Court has already interpreted RFRA to amend a statute much more specific than Title VII. In *Gonzales* v. *O Centro,* the only Supreme Court case applying RFRA, a unanimous Court applied RFRA to the Controlled Substances Act—a statute far more detailed and specific than Title VII. 546 U.S. 418, 126 S. Ct. 1211 (2006). Contrary to its position in this case, the Government conceded in *O Centro* that RFRA applied to detailed statutes like the Controlled Substances Act, and not a single Justice expressed any doubt about its application. *See* 546 U.S. at 434-37, 126 S. Ct. at 1222-24. *A fortiori* RFRA applies to the much less detailed Title VII.

Second, the Government ignores half of the relevant rule of construction. "*[w]here there is no clear intention otherwise*, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148, 153, 96 S. Ct. 1989, 1992 (1976) (emphasis added); *see also* 2B SUTHERLAND STATUTORY CONSTRUCTION § 51:5 (7th ed. 2009) (specific statute controls "unless it appears that the

3

legislature intended to make the general act controlling").[4]  The Government argues that Title VII, as a specific statute, preempts RFRA, but it ignores Congress' clear intent that RFRA be controlling.  RFRA was enacted *for the purpose* of amending earlier statutes; its express intent is to "appl[y] to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993."  42 U.S.C. § 2000bb-3; Response at 11.[5]  Where the plain text has made Congress' intent clear, courts should not stretch rules of interpretation to thwart that intent.[6]

## II. The Government offers no persuasive reason to ignore the plain text and rely on murky legislative history instead.

In her Response, Tagore argued that the statutory text is clear and the legislative history ambiguous.  Response at 11-15 (citing *Wheeler* v. *Pilgrim's Pride Corp.*, 536 F.3d 455 (5th Cir. 2008)).  In reply, the Government accuses Tagore of "attempt[ing] to confuse RFRA's legislative

---

[4]  On the rare occasion that the Fifth Circuit resorts to this canon of construction, it has done so only where there is no express intent to control earlier statutes.  *See, e.g., Terrebonne* v. *K-Sea Transp. Corp.*, 477 F.3d 271, 281-82 (5th Cir. 2007) ("[T]he specific provisions of a statute control exclusively over the broader and more general provisions of another statute which may relate to the same subject matter *in the absence of a clear manifestation to the contrary by the legislature.*") (emphasis added) (citation omitted); *cf. Arguelles-Olivares* v. *Mukasey*, 526 F.3d 171 (5th Cir. 2008) (ruling plain language of statute controlled and refusing to follow Third Circuit precedent relying upon specific language trumping general language).

[5]  The Government's reference to the "intent of the drafters" is not to RFRA itself, but again to a committee report.  Reply at 5.

[6]  The Government offers yet another (new) argument for ignoring the plain text: it would thwart the alleged intent of the drafters, as revealed in the legislative history.  Reply at 5.  The Government's reasoning here is circular: the plain text controls so long as the Court consults the legislative history to ensure the text means what it says.  This argument is nothing more than a distortion of the absurdity rule, which allows the legislative history to control in "rare cases" where the plain text would lead to "absurd results…or would thwart the obvious purpose of the statute."  *CIR* v. *Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166 (1965); *see also United States* v. *Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026 (1989) (relying upon controlling statutory text and relegating legislative history to a footnote).  The Government has made no argument that application of RFRA's plain text in this case would be absurd, or would contravene RFRA's purpose as it is clearly stated in the statutory text.  *See* 42 U.S.C. 2000bb(b) ("The purposes of this chapter are…").

history." Reply at 7. This accusation is a red herring that directs the Court's attention away from the Government's failure to identify a single mention of *Brown* or federal employees in RFRA's legislative history. Instead, the Government attempts to transform a general statement in the committee reports into a specific statutory exemption for federal employees. Reply at 5-7. But the committee reports are the result of evidence taken through legislative hearings. *See* S. Rep. No. 103-111 at 2 (identifying these hearings as the "legislative history"). Tagore cited the only Title VII discussion of which counsel is aware in either the lengthy committee hearings or later debates, and that discussion had nothing to do with *Brown* or federal employees. The Government offers no support for the idea that the statement in the reports referred to *Brown,* despite the Government's obviously thorough study of the hearing testimony. *See, generally,* Reply Appendix.

The Government's attempt to stretch the legislative history is even more clear when it insists that a statement in the committee report is more important than the subsequent statutory amendment—an amendment which ensured that RFRA would apply only to the federal government. *Compare* Response at 15 *with* Reply at 7. It's an odd rule the Government proposes: a statement in the legislative history of the unamended statute trumps the plain text of the amended statute enacted years later.

The legislative history is ambiguous on the question of Title VII preemption and provides no support for the Government's argument that Congress was determined to preempt RFRA claims by federal employees. Even if the legislative history *were* clear, that in itself is not a reason to contravene the plain statutory text. *See* Response at 11-14. The Government has given this Court no reason to contradict RFRA's plain meaning.

### III. The Government fails to demonstrate that pre-*Smith* claims were preempted by Title VII.

In her Response, Tagore pointed out that the Government insisted that Title VII preempted RFRA, but failed to point to a single case where Title VII preempted a free exercise case before RFRA. Response at 12-13. The Government still offers none. Instead it refines its original argument in a footnote, stating that the *only* thing RFRA did was reinstate the *Sherbert* standard. *See* Reply at 3 n.1. It then goes on to argue that RFRA does not unsettle existing law. *See* Reply at 6-7. But this argument only helps the Government if existing law allowed Title VII to preempt free exercise claims in the first place. Moreover, the Government's argument about RFRA being limited to reinstating *Sherbert* ignores RFRA's stated purpose: "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. 2000bb. By its plain terms, RFRA creates a claim for Tagore. The Government's failure to respond to Tagore's argument is a tacit concession that there is *no* pre-*Smith* precedent for Title VII preemption of free exercise claims.

### CONCLUSION

For the foregoing reasons, the Defendants' motion should be denied with respect to the RFRA claim.

Respectfully submitted,

    s/ Eric C. Rassbach
Eric C. Rassbach
Admitted *pro hac vice*
Texas Bar No. 24013375
1350 Connecticut Ave. NW, Ste. 605
Washington, DC 20036
Telephone: (202) 349-7211
erassbach@becketfund.org

Scott Newar
Texas Bar Number 14940900
700 Louisiana, Suite 2550
Houston, Texas 77002-2728
Telephone: (713) 226-7950

The Sikh Coalition
Harsimran Kaur
District of Columbia Bar Number 493428
39465 Paseo Padre Pardway, Ste. 3550
Fremont, CA 94538
Telephone: (510) 659-0900, ext. 92

The Sikh Coalition
Amardeep Singh Bhalla
New York Bar Number AB4371
40 Exchange Pl., Ste. 728
New York, NY 10005
Telephone: (212) 655-3095, ext. 83

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

       I hereby certify that on June 19, 2009, I electronically transmitted the foregoing Plaintiff's Surreply in Opposition to Defendants' Partial Motion to Dismiss to the Clerk's Office by the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants:

Vesper Mei
United States Department of Justice
Civil Division Federal Programs Branch
PO Box 883 Ben Franklin Station
Washington, DC 20044
202-514-4686
vesper.mei@usdoj.gov

                                                                         s/ Eric C. Rassbach
                                                                         Eric C. Rassbach