IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAWALJEET KAUR TAGORE, | § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| THE UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY; FEDERAL PROTECTIVE SERVICE; JANET NAPOLITANO, Secretary of the United States Department of Homeland Security; WILLIAM A. CARMODY, III; DAVID HIEBERT; and DOES 1-25, | § § § § § § § § § § | CIVIL ACTION NO. H-09-0027 |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant's Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Docket Entry No. 106), and Plaintiff's Motion for Entry of Docket Control Order (Docket Entry No. 121). For the reasons explained below, the pending motions will both be denied, and the court will enter an order directing the Joint Pretrial Order to be filed by August 1, 2014, and Docket Call to be held on Friday, August 8, 2014, at 3:00 p.m. in Courtroom 9-B at the Federal Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

## I. Background

Plaintiff, Kawaljeet Kaur Tagore, sued the United States and various federal agencies and their employees alleging that she was subjected to religious discrimination and denied the freedom to practice her religion when the defendants refused to allow her to wear a kirpan — a ceremonial sword — with a 3-inch or longer blade into the federal building where she worked as a Revenue Agent for the Internal Revenue Service ("IRS"). The court dismissed several of plaintiff's claims, and allowed two claims to proceed: a claim for religious discrimination in violation of Title VII, 42 U.S.C. §§ 2000e et seq., against the Treasury Secretary and a claim for violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb et seq., against the United States Department of Homeland Security ("DHS"), the Federal Protective Service ("FPS"), DHS-FPS Area Commander William Carmody III, DHS-FPS District Commander David Hiebert, and 25 unidentified defendants. The court later granted summary judgment in favor of all defendants on both claims (Docket Entry No. 88). The Fifth Circuit affirmed the grant of summary judgment on the Title VII claim, but reversed and remanded the "RFRA claim[s] for further development of evidence concerning the government's compelling interest in enforcing against *this plaintiff* the statutory ban on weapons with blades exceeding 2.5 inches. 18 U.S.C. § 930(a), (g)(2)." Tagore v. United States, 735 F.3d 324, 326 (5th Cir. 2013).

## II. Defendant's Motion to Dismiss

FPS argues that plaintiff's RFRA claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because plaintiff lacks standing to maintain her RFRA claim, plaintiff's RFRA claim challenging FPS's policy of enforcing 18 U.S.C. § 930 categorically is moot, and an RFRA claim challenging FPS's new policy allowing individualized enforcement of 18 U.S.C. § 930 is not ripe.[1]

### A. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Id.

---

[1]Defendant's Memorandum in Support of Motion to Dismiss ("Defendant's Memorandum in Support"), Docket Entry No. 107, p. 1.

**B. Analysis**

    1. <u>Plaintiff Has Standing to Prosecute RFRA Claims</u>

Asserting that RFRA does not waive sovereign immunity for money damages and that plaintiff's remedy under RFRA is limited to prospective injunctive relief, FPS argues that the court lacks subject matter jurisdiction over plaintiff's RFRA claims because "she cannot show the likelihood of 'substantial and immediate irreparable injury' necessary to obtain prospective injunctive relief."[2] FPS argues that plaintiff is unable to show the likelihood of substantial and immediate irreparable injury required to obtain prospective injunctive relief because she is no longer a federal government employee and, therefore, has no need to choose on a daily basis between wearing a *kirpan* with a blade longer than 2.5 inches and entering the federal building where she once worked.[3] Citing <u>City of Los Angeles v. Lyons</u>, 103 S. Ct. 1660 (1983), and <u>Lujan v. Defenders of Wildlife</u>, 112 S. Ct. 2130 (1992), defendants argue that even if plaintiff would someday regain federal employment, such a possibility is too remote to confer standing in this case.[4]

In support of her argument that she has standing to prosecute her RFRA claims plaintiff submits a declaration stating:

---

    [2]<u>Id.</u> at 5.

    [3]<u>Id.</u> at 6-7.

    [4]<u>Id.</u> at 1 and 7-8.

30. It remains my primary intention and objective to gain reinstatement to the IRS as a Revenue Agent and resume my career with that agency. Failing that, it is my intention and objective to gain reinstatement to another federal governmental agency in a position that — in terms of salary, benefits, status, duties, responsibilities, and promotability — equals or exceeds the Revenue Agent position that I held at the IRS.

31. To that end, since the IRS terminated my employment in July, 2006 I have applied for over 300 jobs with federal governmental agencies, including the Department of Treasury and the IRS.

32. To date, I have not received a single job offer.

33. In fact, the Treasury Department has notified me that it considers me ineligible for reinstatement.

34. I currently work as an independent tax consultant to individuals and businesses.

35. In my capacity as a tax consultant, I continue to have need to visit IRS offices (as I have done on several occasions since July, 2006) to meet with IRS agents, to conduct research, and engage in other tax-related business.

36. When I visit the IRS offices, I will — as I have done continuously since mid-April, 2005 — wear my *kirpan*, which has an edge that is longer than 2.5 inches.[5]

---

[5] Declaration of Kawaljeet Tagore, Exhibit A to Plaintiff's Response to Federal Protective Service's Motion to Dismiss ("Plaintiff's Response") ("Tagore Declaration, Ex. A to Plaintiff's Response") Docket Entry No. 113-1, pp. 5-6 ¶¶ 30-36. See also Declaration of Kawaljeet Tagore, Exhibit A to Plaintiff's Supplemental Response to Federal Protective Service's Motion to Dismiss ("Plaintiff's Supplemental Response") ("Tagore Declaration, Ex. A to Plaintiff's Supplemental Response"), Docket Entry No. 125, pp. 7-8 ¶¶ 2-5 (stating that since November 16, 2013, she has applied for over 1,100 federal jobs, including approximately 440 IRS positions, but has not received a job offer and has been deemed "ineligible" for some positions).

In a supplemental declaration plaintiff states that from January of 2006 to December of 2013, the only IRS offices she attempted to enter and, in fact, entered, had no security checkpoint, and that due to the FPS's categorical enforcement of 18 U.S.C. § 930, she did not attempt to enter federal buildings that had security checkpoints.[6] Plaintiff also states that on December 13, 2013, when she attempted to enter the Mickey Leland Federal Building in Houston, Texas, to obtain tax information at the IRS office, the security guards denied her entry because she was wearing a *kirpan* with a blade that exceeds 2.5 inches in length.[7] Plaintiff argues that "by virtue of the FPS' refusal to allow [her] to enter the Leland building on December 13, 2013, [she] has established a 'demonstrated probability' or 'reasonable expectation' that she **has** been and will continue to be subjected to the same unlawful government action again."[8] The court agrees.

    (a)   Applicable Law

Article III of the United States Constitution limits the judicial power of federal courts to the resolution of cases and

---

[6]Declaration of Kawaljeet Tagore, Exhibit A to Plaintiff's Surreply to Federal Protective Service's Motion to Dismiss ("Tagore Declaration, Ex. A to Plaintiff's Surreply"), Docket Entry No. 117-1, pp. 2-3 ¶¶ 2-5.

[7]Tagore Declaration, Ex. A to Plaintiff's Response, Docket Entry No. 113-1, pp. 2-5 ¶¶ 2-29; Tagore Declaration, Ex. A to Plaintiff's Surreply, Docket Entry No. 117-1, p. 3 ¶¶ 6-7.

[8]Plaintiff's Response, Docket Entry No. 113, p. 8.

controversies. U.S. Const. art. III, § 2, cl. 1. See Lujan, 112 S. Ct. at 2136-37. This limitation requires the party invoking federal jurisdiction to have standing, i.e., the "personal interest that must exist at the commencement of the litigation" Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 120 S. Ct. 693, 709 (2000). Moreover, the requisite personal interest that must exist at the commencement of a case must continue throughout its existence. Id. at 709 and 722. The personal interest that constitutes standing consists of three elements: (1) an injury-in-fact, i.e., an invasion of a legally protected interest that is concrete, particularized, actual or imminent; (2) a causal connection between the injury-in-fact and the defendants' challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. Id. at 704 (citing Lujan, 112 S. Ct. at 2136-37). To obtain injunctive relief plaintiff must show that defendant's challenged conduct is likely to cause her to suffer future injury and that the relief sought will prevent that future injury. O'Shea v. Littleton, 94 S. Ct. 669, 676 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); Lyons, 103 S. Ct. at 1667 ("standing to seek the injunction requested depended on whether [plaintiff] was likely to suffer future injury from the [complained of conduct]"). As the

party invoking federal jurisdiction, plaintiff "bears the burden of showing that [s]he has standing for each type of relief sought." Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009).

(b) Application of the Law to the Facts

Although plaintiff is no longer employed by the IRS, in her declarations she presents undisputed evidence that her current work as a tax consultant and her on-going efforts to gain other government employment continue to take her to federal buildings for which FPS provides security services. Plaintiff has also presented undisputed evidence that security guards at federal buildings where FPS provides security services continue to enforce 18 U.S.C. § 930 categorically to ban all weapons with blades longer than 2.5 inches, thus forcing her to choose between entering the federal building and practicing her religious belief that she wear a *kirpan* with a blade longer than 2.5 inches. Because plaintiff complains that having to choose between entering a federal building and wearing a *kirpan* with a blade longer than 2.5 inches substantially burdens the practice of her sincerely held religious belief, plaintiff's undisputed evidence is sufficient to establish not only that the defendants' allegedly illegal conduct has caused her to suffer an injury-in-fact in the past, but also that the same conduct is likely to cause her to suffer future injury.

The Supreme Court's opinions in Lyons, 103 S. Ct. 1660, and Lujan, 112 S. Ct. 2130, on which the FPS bases its motion to

dismiss, do not weigh against standing in this case. In <u>Lyons</u> the Supreme Court held that a plaintiff lacked standing to seek an injunction against the enforcement of a police choke-hold policy because he could not credibly allege that he faced a realistic threat from the policy. <u>Lyons</u>, 103 S. Ct. at 1667 & n.7. In reaching this holding the Court noted that "Lyons alleged that he feared he would be choked in any future encounter with the police. The reasonableness of Lyons' fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct," <u>id.</u> at 1668 & n.8, <u>i.e.</u>, that he was choked without provocation or legal excuse. <u>Id.</u> at 1667 & n.7. Concluding that his subjective apprehensions that such a recurrence would take place were not enough to support standing, the Court explained that

> [i]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.

<u>Id.</u> at 1668 & n.8. Here, in contrast, it is undisputed that defendant's allegedly unlawful conduct — <u>i.e.</u>, violating RFRA by categorically enforcing 18 U.S.C. § 930 to ban all weapons with blades longer than 2.5 inches — was occurring when the complaint was filed. Under the <u>Lyons</u> analysis the only issue is "the *reality* of the threat of repeated injury."

Plaintiff's undisputed declaration that her job and her job search continue to take her to federal buildings where FPS provides

security services, and that as recently as last December FPS security guards enforced 18 U.S.C. § 930 categorically to ban all weapons with blades longer than 2.5 inches, including the *kirpan* that she was wearing when she attempted to enter the Leland Building on December 13, 2013, evidences "the *reality* of the threat of repeated injury." That is, plaintiff's evidence shows that there is nothing improbable about the proposition that defendants' practice of enforcing 18 U.S.C. § 930 categorically to ban all weapons with blades longer than 2.5 inches will in the future force plaintiff to choose between entering a federal building for which FPS provides security services and practicing her religious belief of wearing a *kirpan* with a blade that is longer than 2.5 inches. Plaintiff's evidence is, therefore, sufficient to satisfy the injury-in-fact requirement for constitutional standing. See Laidlaw, 120 S. Ct. at 706. See also Lujan, 112 S. Ct. at 2137 (acknowledging that in a suit challenging the legality of government action where the plaintiff is the object of the action at issue and is likely to be the object of that action in the future, there is ordinarily little question that the action has caused the plaintiff injury sufficient to satisfy the injury-in-fact prong of the requirements for constitutional standing). Defendants do not dispute that a judicial order prohibiting them from categorically enforcing 18 U.S.C. § 930 against weapons with blades longer than 2.5 inches worn for religious purposes would remedy the threat of future injury to plaintiff by eliminating or

minimizing the risk that plaintiff's ability to practice her religious belief will be substantially burdened in the future.

Because plaintiff has sufficiently alleged a judicially cognizable injury-in-fact, that is causally related to burdens imposed by the defendants' on-going practice of categorically enforcing 18 U.S.C. § 930 to ban from federal buildings for which FPS provides security services all weapons with blades longer than 2.5 inches, and because an injunction issued by the court barring the defendants from enforcing 18 U.S.C. § 930 categorically against the plaintiff for carrying a weapon worn for religious purposes would redress the plaintiff's alleged injury, the court concludes that plaintiff has carried her burden of establishing standing to continue prosecuting her RFRA claims in this action.

### 2. Plaintiff's RFRA Claim is Not Moot

Asserting that "during the pendency of plaintiff's appeal, FPS issued a new policy requiring individualized consideration for entry of otherwise prohibited items into federal buildings, which would include plaintiff's *kirpan*,"[9] and that "[t]his policy superseded FPS's initial blanket prohibition on knives with blade lengths of 2.5 inches or greater,"[10] defendant FPS argues that its new policy "renders plaintiff's RFRA claim moot,"[11] and provides

---

[9] Defendant's Memorandum in Support, Docket Entry No. 107, p. 1.

[10] Id.

[11] Id.

plaintiff with all the relief to which she would be entitled should she prevail in full.[12] FPS explains that

> [o]n December 10, 2012, while plaintiff's appeal was pending, FPS issued a policy directive concerning entry of otherwise prohibited items into federal buildings for which FPS provides security services. *See* "Prohibited Items Program," attached as Ex. A. . . . This policy directive, among other things, sets out procedures by which individuals can request an exception (defined as being temporary in nature) or exemption (defined as being permanent in nature, or until rescinded) under certain statutes, including RFRA, in order to bring otherwise prohibited items into federal buildings for which FPS provides security services.
>
> Attachment 2 to FPS's new policy sets forth the procedures for applying for such an exception or exemption. Ex. A. Att. 2, "Federal Protective Service Procedures for Exceptions and Exemptions to Otherwise Prohibited Items." Under those procedures, if an item is initially denied entry into the building by the FPS security guard or screener, there are a number of steps to ensure that the item receives careful and individualized consideration. Ex. A. Att. 2, at 2-3; *see also* Att. 2 flowchart. A final decision to deny an item entry into a building must be made by the Director of FPS, in conjunction with attorneys from DHS's Office of the General Counsel and Civil Rights and Civil Liberties. *Id.* The final page of the policy is a flyer that addresses kirpans. That flyer, entitled "Accommodating Sikh Articles of Faith," suggests that while a kirpan with a blade 2.5 inches or longer may qualify as a dangerous weapon under 18 U.S.C. § 930, an exception or exemption may be received that would allow such an article into the building.
>
> The new policy thus attempts to maintain the ability of FPS to balance the safety and security of the federal buildings against the rights of individuals to enter with items that might otherwise be prohibited. In addition, by requiring consideration of the denial of entry [of] an item by the highest levels of FPS, the policy attempts to ensure consistency in enforcement, while cabining the

---

[12]Defendant's Reply in Further Support of Motion to Dismiss ("Defendant's Further Support"), Docket Entry No. 116, p. 2.

discretion of individual security guards at the entrances to federal buildings.[13]

Plaintiff argues that her RFRA claims are not moot because, as evidenced by her inability to enter the Leland Federal Building on December 13, 2013, the new policy has either not been implemented or not been implemented in a manner that does not continue to substantially burden the exercise of her religious beliefs.[14] Alternatively, citing Lyons, 103 S. Ct. at 1660, and Moore v. Hosemann, 591 F.3d 741 (5th Cir. 2009), plaintiff argues that her RFRA claims fall under the "capable of repetition but evading review" exception to mootness.[15]

        (a)   Applicable Law

The only basis for a finding of mootness in this case is FPS's voluntary adoption of a new policy calling for individualized as opposed to categorical enforcement of 18 U.S.C. § 930's ban of weapons with blades longer than 2.5 inches from federal buildings for which FPS provides security services. "'It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Laidlaw, 120 S. Ct. at 708 (quoting City of Mesquite v. Aladdin's Castle, Inc., 102 S. Ct. 1070, 1074

---

[13]Defendant's Memorandum in Support, Docket Entry No. 107, pp. 2-3.

[14]Plaintiff's Response, Docket Entry No. 113, pp. 6-7.

[15]Id. at 7-8.

-13-

(1982)). The Supreme Court has explained that "[s]uch abandonment is an important factor bearing on the question of whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." City of Mesquite, 102 S. Ct. at 1074. In City of Mesquite the Court explained that

> [t]he test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave "[t]he defendant . . . free to return to his old ways". . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . Of course it is still open to appellees to show, on remand, that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary. . . . This is a matter for the trial judge.

Id. at 1075 n.10 (citations omitted). See also Laidlaw, 120 S. Ct. at 708 ("[T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"). Moreover, "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," Laidlaw, 120 S. Ct. at 708. See K.P. v. LeBlanc, 729 F.3d 427, 438 (5th Cir. 2013) ("[A] defendant cannot automatically moot a case simply by ending its [challenged] conduct once sued." Instead, "'a defendant claiming that its voluntary

compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'").

         (b)   Application of the Law to the Facts

Plaintiff argues that "by virtue of the FPS' refusal to allow [her] to enter the Leland building on December 13, 2013, [she] has established a 'demonstrated probability' or 'reasonable expectation' that she **has** been and will continue to be subjected to the same unlawful government action again."[16] The court agrees. Although defendants argue that "there is no indication that, should the plaintiff attempt to again enter a federal building with her *kirpan*, the policy will not be followed,"[17] the defendants' own briefing suggests otherwise. Despite defendants' assertion that the new policy was signed by the Director in December of 2012,[18] defendants acknowledge that "the December 13, 2013, denial of entry was . . . a circumstance where the new policy was not applied. . . ."[19]

Defendants acknowledge that

> the Fifth Circuit remanded plaintiff's RFRA claim for an examination of whether the plaintiff should receive an "individualized case-by-case determination" to determine

---

[16] Id. at 8.

[17] Defendant's Further Support, Docket Entry No. 116, p. 10 n.7.

[18] Id.

[19] Id. at 10.

> whether the government has a compelling interest in enforcing 18 U.S.C. § 930 against her, and whether its means are the least restrictive to achieve its objections.[20]

See Tagore, 735 F.3d at 331. Defendants also acknowledge that on December 13, 2013 — over a year after the Director signed the new policy — plaintiff did not receive an individualized case-by-case determination of whether there exists a compelling interest in enforcing 18 U.S.C. § 930 against her, and whether the means of categorical enforcement is the least restrictive to achieve the government's objectives.[21] Defendants have not submitted any evidence from which the court could conclude that this allegedly wrongful behavior could not reasonably be expected to recur, or that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary. Laidlaw, 120 S. Ct. at 708. Accordingly, defendants have not carried their burden of persuading the court that the new policy moots the plaintiff's RFRA claims. Id. (placing burden of persuasion on issue of mootness on the party asserting mootness); LeBlanc, 729 F.3d at 438 (same)).

Alternatively, the court concludes that the plaintiff's RFRA claims are not moot because they fall under the "capable of repetition while evading review" exception to mootness. In Moore, 591 F.3d at 744, the Fifth Circuit stated that

---

[20]Defendant's Further Support, Docket Entry No. 116, p. 8.

[21]Id. at 10 (describing plaintiff's attempt to enter the Leland Building on December 13, 2013, wearing her kirpan as a "circumstance where the new policy was not applied to her").

> [a]n important exception to the mootness doctrine . . . is "attacks on practices that no longer directly affect the attacking party, but are 'capable of repetition' while 'evading review'". . . . To invoke that exception, a party must show that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."

Because the defendants' practice of forcing plaintiff to choose between wearing a *kirpan* with a blade longer than 2.5 inches and entering a federal building for which FPS provides security services is a challenged action that is too short in duration to be fully litigated prior to cessation or expiration of the practice, and because there is a reasonable expectation that plaintiff will be subject to the same practice again in the future, the court concludes that the "capable of repetition while evading review" exception to mootness applies in this case.

### 3. Plaintiff's RFRA Claim Is Ripe for Review

Asserting that "FPS's new policy has not yet been applied to [plaintiff],"[22] FPS argues that "plaintiff's claim is not ripe for review."[23] This argument has no merit because as explained in the preceding section, FPS argues that the new policy was signed by the Director in December of 2012, but does not dispute that when a year later in December of 2013 plaintiff attempted to enter the Leland Building wearing her *kirpan*, the new policy was not applied to

---

[22]Defendant's Memorandum in Support, Docket Entry No. 107, p. 1.

[23]Id.

her.[24] Moreover, the claims asserted in this action do not challenge the new policy, they challenge the FPS's admitted practice of enforcing 18 U.S.C. § 930 categorically to all weapons with blades longer than 2.5 inches without according blades worn for religious purposes the "individualized case-by-case determination" mandated by RFRA. Plaintiff's RFRA claim is thus ripe for review.

### III. <u>Plaintiff's Motion for Entry of Docket Control Order</u>

Asserting that "[t]he Fifth Circuit's mandate — which this Court received on January 14, 2014 — effectively requires that Ms. Tagore be afforded a trial on her claim that various defendants (namely, the United States of America; the Department of Homeland Security ("DHS"); the Secretary of the Department of Homeland Security; and the Federal Protective Service ("FPS") violated her rights under the Religious Freedom Restoration Act ("RFRA"),"[25] plaintiff "requests that this Court enter a Docket Control Order setting a trial at the earliest possible date."[26] For the reasons stated in the previous sections of this Memorandum Opinion and Order, and for the reasons stated by the Fifth Circuit in <u>Tagore</u>, 735 F.3d at 324, the court concludes that defendants are not entitled to dismissal of plaintiff's RFRA claims and that this case

---

[24]Defendant's Further Support, Docket Entry No. 116, pp. 2 and 10 n.7.

[25]Plaintiff's Motion for Entry of Docket Control Order, Docket Entry No. 121, pp. 1-2.

[26]<u>Id.</u> at 2.

cannot be resolved absent a trial on the merits. Since, however, this case has been fully developed for trial, the court is not persuaded that a Docket Control Order needs to be entered. Instead, the court will order the parties (1) to submit a Joint Pretrial Order by August 1, 2014, and (2) to appear for Docket Call on August 8, 2014, at 3:00 p.m. The issues to be tried and the issues on which the parties should focus when preparing the Joint Pretrial Order are those that the Fifth Circuit identified in its opinion: (1) whether Tagore holds a sincere religious belief in wearing a *kirpan* with a blade exceeding 18 U.S.C. § 930's prescribed maximum of 2.5 inches and, if so, (2) whether the FPS's enforcement of 18 U.S.C. § 930's prescribed maximum substantially burdened or burdens Tagore's religious practice and, if so, (3) whether the government is able to prove that application of 18 U.S.C. § 930 to Tagore furthers a compelling government interest with the least restrictive means.

Proof of this third element will require the defendants to explain why alternative policies would be unfeasible or less effective in maintaining institutional security, and will require "more evidence concerning [FPS's] asserted need for uniform application of Section 930(a) and the impact of the new Policy Statement on this case." See Tagore, 735 F.3d at 332. See also id. at 331 (referencing "Accommodations for Sikh Articles of Faith," Attachment 5 to the FPS Policy Statement promulgated during the pendency of plaintiff's appeal, instructing FPS officers that *kirpans* with blades longer than 2.5 inches require an exception or

exemption before being carried into federal buildings, and stating: "One must ask, why refer to 'accommodations' and append this attachment to a document describing procedures for obtaining exceptions or exemptions if, as FPS contends against Tagore, case-by-case determinations are impractical or inconsistent with maintaining security?"). The parties' briefing reflects that they disagree as to the types of relief that RFRA would provide to the plaintiff should she prevail at trial, but is not adequate for the court to decide this issue. Accordingly, the parties are encouraged to address in the Joint Pretrial Order in greater depth than has been done in the current briefing the relief that RFRA would provide the plaintiff should she prevail at trial.

## IV.   Conclusions and Order

For the reasons explained above in § II, Defendants' Motion to Dismiss (Docket Entry No. 106) is **DENIED**. For the reasons explained above in § III, Plaintiff's Motion for Entry of Docket Control Order (Docket Entry No. 121) is **DENIED**. The parties shall file a Joint Pretrial Order by Friday, August 1, 2014, and appear for Docket Call on Friday, August 8, 2014, at 3:00 p.m. in Courtroom 9-B of the Federal Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this the 24th day of June, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE